UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARLETTA FERGUSON,

                              Plaintiff,

      v.                                      **DECISION AND ORDER**
                                                        09-CV-697S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

      1.      Plaintiff Carletta Ferguson challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since April 2, 2005, due to cognitive impairments, in combination with depression, anxiety, and asthma. Plaintiff contends that her impairments meet the Commissioner's "listing" for mental retardation, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.05C, and that they have rendered her unable to work. She therefore asserts that she is entitled to payment of disability benefits under the Act.

      2.      Plaintiff filed an application for disability insurance benefits on December 13, 2005, with a protective filing date of November 8, 2005. Her application was initially denied on May 22, 2006, and she did not seek reconsideration. Instead, Plaintiff requested an administrative hearing, which was held before ALJ William Pietz on July 30, 2008. Plaintiff appeared at the hearing with counsel and testified. The ALJ considered the case *de novo*, and on August 15, 2008, issued a decision denying Plaintiff's application for benefits. On June 15, 2009, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the

1

current civil action on August 5, 2009, challenging Defendant's final decision.[1]

3. On April 13 and May 11, 2010, the Government and Plaintiff filed Cross Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla" and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support

---

[1] The ALJ's August 15, 2008 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Social Security Act.  See 20 C.F.R. § § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since her November 8, 2005 filing date (R. at 19);[2] (2) Plaintiff's affective disorder, anxiety disorder, questionable mild mental retardation, questionable learning disorder, asthma and polysubstance abuse constitute a severe combination of impairments within the meaning of the Act (R. at 19); (3) Plaintiff's impairments, however, do not meet the criteria necessary for finding a disabling impairment under the regulations (R. at 19); (4) Plaintiff retains the residual functional capacity to perform a full range of work at all exertional levels, with some nonexertional limitations (R. at 19, 20); and (5) Plaintiff has no past relevant work (R. at 19, 22). Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that Plaintiff could perform a full range of work at all exertional levels and that there are a number of jobs in the national economy that Plaintiff could perform. The ALJ determined that Section 204.00 of the Medical-

---

[2] Citations to the underlying administrative record are designated as "R."

Vocational Guidelines required this finding because Plaintiff had only nonexertional limitations, and a vocational expert testified about job availability for a person with such limitations (R. at 22-23, 391-396). Ultimately, the ALJ determined that Plaintiff was not disabled, as defined by the Act, at any time since her application was filed. (R. at 24).

10. Plaintiff's first challenge to the ALJ's decision is that he erroneously failed to find that Plaintiff met the Section 12.05C standard for mental retardation, a "per se disabling" impairment. 20 C.F.R. Pt. 404, Subpt. P, App. I, § 12.05. Plaintiff contends that the ALJ failed to properly consider substantial evidence of record demonstrating her listing-level condition. The ALJ found that Plaintiff did not establish all three of the elements required by Section 12.05C. Plaintiff cannot succeed at Step Three of the sequential disability analysis unless she meets all of the relevant listing's specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990).

The introductory paragraph of Section 12.05 contains the diagnostic description for mental retardation. To meet the listing, Plaintiff must first show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" prior to age 22. 20 C.F.R. Pt. 404, Subpt. P, App. I, § 12.05. Once Plaintiff has made this showing, she must then satisfy one of the four sets of criteria listed in Paragraphs A through D, demonstrating a sufficiently severe impairment. Id. Paragraph C requires: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id.

Plaintiff contends that the evidence in the record, in particular her full-scale IQ test score of 65, is sufficient to meet all three elements of the Section 12.05C listing. There is

5

no dispute that Plaintiff's intellectual functioning is below average, but nevertheless, there is substantial evidence to support the ALJ's conclusion that she did not meet the standard for mental retardation under Listing 12.05C. Plaintiff's full-scale IQ score of 65 was reported by SSA consultative psychologist Dr. Dickinson after examination on March 31, 2006. (R. at 272-77). Dr. Dickinson also reported that Plaintiff was able to read at a second grade level. (R. at 275) The IQ score, if valid, demonstrates the significantly subaverage intellectual functioning required by the introduction to Section 12.05. But both review psychologist Dr. Mohan and the ALJ questioned the validity of the IQ score, stating that it is inconsistent with Plaintiff's testimony, educational background, and activities of daily living. In response, Plaintiff claims that the ALJ improperly substituted his own opinion in place of Dr. Dickinson's valid test results, and thus failed to consider substantial evidence of record.

Regarding the second prong of Section 12.05's threshold requirements, Plaintiff asks the Court to extrapolate the necessary evidence from the full-scale IQ score of 65. Citing Santiago v. Astrue, Plaintiff argues that a valid and reliable IQ test performed when the claimant was well past 22 years of age demonstrating mild mental retardation, along with a second grade reading level, is sufficient to meet the listing requirements for 12.05C, absent evidence to the contrary. See No. 07-CV-6239CJS, 2008 U.S. Dist. WL 2405728, at *2 (W.D.N.Y. June 11, 2008). This argument presumes that the IQ score of 65 is accurate and has remained stable throughout Plaintiff's lifetime. Plaintiff argues that the ALJ erred by not concluding that her IQ score of 65 as an adult also supported a finding that her mental retardation existed before she turned 22. This conclusion would satisfy the second threshold requirement of the Section 12.05 introductory paragraph, and allow the analysis to proceed to the third and final element: Paragraph C severity criteria.

6

11. The ALJ chose not to conclude from the March 2006 full-scale IQ score of 65 that Plaintiff was mentally retarded prior to age 22. The ALJ noted that Plaintiff's undisputed, decades-long history of substance abuse "can quite reasonably be expected to have a negative impact on intellectual functioning." (R. at 20). Such an impact would constitute evidence of an intervening intellectual trauma inflicted after the developmental period, sufficient to undermine Plaintiff's claim that the required mental retardation originated before age 22. The presumption of an IQ score's stability is only appropriate in the absence of evidence of potentially IQ-lowering trauma. See Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001) ("Mental retardation is not normally a condition that improves as an affected person ages . . . . Rather, a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning.") Although Santiago also involved a claimant in her forties claiming mental retardation and a second-grade reading level, the court found "no evidence of an illness or trauma that could explain how she could have tested with a low IQ score in her 40s, but not in her earlier years." Santiago, 2008 WL 2405728, at *3.

In rendering his decision, the ALJ considered the entirety of the medical and other evidence, including the full-scale IQ score of 65. The ALJ weighed Dr. Dickinson's report and found that it was not fully supported by the rest of the objective evidence in the record. (R. at 18). The ALJ, supported by Dr. Mohan, found the IQ score inconsistent with Plaintiff's level of functioning, as evidenced by Plaintiff's testimony and other objective evidence. Plaintiff twice told Dr. Dickinson that in high school she had taken regular classes with resource help for "health." (R. 272, 289-90). At her hearing, Plaintiff told the ALJ that she had taken special education classes. (R. at 371). But the majority of Plaintiff's school records were unavailable, despite a request by the agency for all records

7

available from the Buffalo Board of Education Committee on Special Education. (R. at 148-150, 233-235, 331-333). Any available information was requested and provided twice, in 2005 (R. at 331-33) and 2006 (R. at 148-50).[3] The only records received from the Committee on Special Education were bus pass requests dating from 1975 and 1976. (R. at 150, 333). Plaintiff argues that these notations suggest that she was enrolled in special educational classes, despite her own prior statements to the contrary.

The ALJ was not persuaded by Plaintiff's argument and instead found that the evidence failed to establish a longitudinal history of poor adaptive functioning that first manifested itself before age 22. (R. at 20). Because the ALJ determined that Plaintiff did not satisfy the introductory requirement of Section 12.05, there was no need to consider the Paragraph C criteria.

Having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's treatment of Plaintiff's mental retardation claim. The regulations state that "the results of intelligence tests are only part of the overall assessment," to be considered along with other medical evidence, information from the claimant herself, and nonmedical evidence such as work attempts or information from family members. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A Section 12.00(D)(6)(a). The IQ score of 65 reported by Dr. Dickinson is of suspect validity. (R. at 22). Just 29 days before the IQ test, Dr. Dickinson found that Plaintiff was functioning in the borderline intellectual range, which requires a score between 71 and 84. (R. at 22, 293). See Swope v. Barnhart, 436 F.3d 1023, 1024 (8th Cir. 2006) ("Borderline intellectual functioning is a condition defined as an IQ score within the 71-84 range while mental retardation is a score of about 70 or below" (quoting

---

[3] The ALJ is not obligated to obtain additional information where there are no "obvious gaps in the administrative record and where the ALJ already possesses a 'complete medical history.'" Rosa v. Callahan, 168 F.3d at 79 n.5 (2d Cir. 1999).

8

Hutsell v. Massanari, 259 F.3d 707, 709 n. 3 (8th Cir. 2001))). Moreover, SSA review psychologist Dr. Mohan later determined that the IQ score of 65 was an unequivocal "underestimate." (R. at 259, 271). Dr. Mohan found the IQ score inconsistent with Plaintiff's activities of daily living and educational background. (R. at 259). This supports the ALJ's finding that, despite her IQ score and longitudinal history, Plaintiff actually functions at a relatively high level. (R. at 22).

Plaintiff's personal testimony and activities also reflect a level of functioning that is incompatible with an IQ score of 65. (R. at 22). Plaintiff reported to Dr. Dickinson that she left high school during her junior year, either due to pregnancy or fighting, but not because of academic or intellectual difficulties. (R. at 20). Plaintiff's work history demonstrates an ability to perform unskilled factory and production work. The record does not reflect any physical or mental performance problems at a series of temporary jobs; on the contrary, Plaintiff's temporary job placement agency reported that she was hired permanently by her last employer. (R. at 22, 226).

Notably, Plaintiff claimed at her hearing to be both able to work and looking for work. (R. at 21, 378). Plaintiff told Dr. Dickinson that she was no longer able to do her past work only because of physical impairments. (R. at 22). But these alleged physical impairments are not borne out by the objective medical evidence. Id. Plaintiff's pulmonary function testing was normal. She only uses an inhaler as needed. Id. SSA consultative physical examiner Dr. Balderman found in March 2006 that Plaintiff had no impairments except for bronchitis and a history of alcohol and cocaine abuse. (R. at 22, 278-88). The ALJ noted that no examining or reviewing source – including Dr. Dickinson – opined that Plaintiff is disabled. (R. at 22). Although such a determination would not be dispositive, it is noteworthy that no medical provider considered her disabled. See 20 C.F.R. § 404.1527

9

(conclusory statements made by doctors are not controlling because it is the Commissioner's task to determine whether an individual is disabled within the meaning of the Act).

The ALJ also found Plaintiff to be overall less than fully credible. (R. at 21). The ALJ found that Plaintiff's testimony was inconsistent with her own prior statements and her residual functional capacity. Id. There is also evidence that Plaintiff was non-compliant with treatment recommendations and that she often failed to appear for scheduled appointments. (R. at 304, 308, 341, 345).

For the reasons stated above, this Court finds that Plaintiff's borderline cognitive functioning, suspect IQ test score, past work efforts, and daily activities all support the ALJ's conclusion that Plaintiff did not meet the standard for mental retardation under Section 12.05C. See Alvarado v. Barnhart, 432 F. Supp. 2d 312, 315-19 (W.D.N.Y. 2006). The ALJ's decision is therefore supported by substantial evidence and Plaintiff's first argument fails.

12. Plaintiff's second argument is that the ALJ's residual functional capacity finding is not supported by substantial evidence, because (1) the hypothetical posed to the vocational expert during the hearing improperly excluded Plaintiff's nonexertional impairments, (2) the vocational expert's testimony conflicted with the Dictionary of Occupational Titles ("DOT"), and (3) the ALJ improperly considered Plaintiff's testimony.

13. The ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels with certain nonexertional limitations, including: that she could not read beyond the second grade level; she could understand, remember, and carry out simple instructions; she could occasionally deal with the public, co-workers and supervisors; and she needed to avoid concentrated exposure to dust, fumes, gases and

temperature extremes. (R. at 20). Plaintiff argues that this finding is inconsistent with the hypothetical posed to the vocational expert.

14. Plaintiff claims that the ALJ failed to include in his hypothetical the additional nonexertional impairments alleged by Plaintiff's representative at the hearing. According to the report by Dr. Madan Mohan, SSA's review psychologist, Plaintiff had several moderate impairments that could limit her ability to meet the mental demands of work. Specifically, in Part I of SSA's Form SSA 4734-BK-SUP he indicated that Plaintiff was "moderately limited" in 12 of the 20 areas deemed necessary to sustain work activity over a workday and workweek. (R. at 257-58). Plaintiff argues that these "nonexertional" impairments, taken in combination, significantly limit her ability to perform work, a complexity that is not reflected in the ALJ's hypothetical, and was thus not considered by the VE.

The ALJ explained at the hearing that he was not obligated to include in his hypothetical the limitations alleged by Plaintiff's representative. Part I of the form submitted by Dr. Mohan and cited by Plaintiff (Form SSA 4734-BK-SUP) did not constitute the RFC. (R. at 395). Section III of the form is the actual RFC Assessment. (R. at 257-58). POMS Section DI 24510.060[4] explains how the form is used to report a claimant's Mental Residual Functional Capacity Assessment. Section (B)(2)(a) of the document cautions, "Section I [of the form] is merely a worksheet . . . and does not constitute the RFC assessment." The document also instructs, "Section III - Functional Capacity Assessment, is for recording the mental RFC determination. It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in Section

---

[4] The Program Operations Manual System (POMS) is used by Social Security employees to process claims for Social Security benefits. POMS Section DI 24510.060 addresses form SSA-4734-F4-SUP, which has been updated as SSA-4734-BK-SUP.

I . . . ." POMS Section DI 24510.060 Section (B)(4)(a).

The ALJ determined that Plaintiff is able to perform a full range of work at all exertional levels, with some nonexertional limitations. (R. at 20). Considering these limitations in the context of Plaintiff's past unskilled work, the ALJ found that her ability to work was not significantly compromised by her nonexertional limitations. The hypothetical posed to the ALJ at the hearing was actually more restricted than the RFC assessment the ALJ ultimately issued, in that the hypothetical individual was able to perform at only the light exertional level.[5] (R. at 20, 392).

This Court finds that the hypothetical posed by the ALJ was adequate. Plaintiff is incorrect: the limitations indicated by Dr. Mohan in Section I of Form SSA 4734-BK-SUP do not constitute Plaintiff's actual RFC, and therefore did not have to be included in the ALJ's hypothetical to the VE. The hypothetical that the ALJ posed to the VE adequately represented Plaintiff's restrictions.

15.     Plaintiff next argues that VE Janikowski's testimony conflicted with the DOT. Plaintiff argues that there are unresolved inconsistencies between the jobs identified by the VE and the same jobs as described in the DOT. Per Social Security Ruling ("SSR") 00-4p, a VE's testimony must conform to the DOT. The DOT states that the job of bench assembler requires a general educational development ("GED") reasoning score of two, which Plaintiff contends is beyond her capacity. But under SSR 00-4p, SSA relies upon skill levels, rather than GED ratings, to decide whether a claimant can perform a particular job.

---

[5]The ALJ posed the following hypothetical to the VE at the hearing: "Assume you have a person capable of performing at the light level of exertion, has a . . . full scale IQ of 65, second grade reading level, avoid concentrated exposure to temperature extremes, and dust, fumes and gases, simple instructions, and the only occasional dealing with public, supervisors and coworkers. Are there any jobs for such a person?" (R. at 392).

12

Plaintiff argues that a reasoning level of two is inconsistent with the VE's testimony that Plaintiff could perform the unskilled jobs that he cited. Discussion between the Plaintiff's representative and the VE at the hearing addressed this alleged inconsistency. (R. at 394). The VE testified that the reasoning level was consistent with the hypothetical, in part because it was a "thing-oriented job learned primarily through demonstration." Id. The possible conflict was resolved by the VE's testimony. Additionally, work at reasoning level two has been found consistent with a requirement that work be simple, routine, and repetitive. Money v. Barnhart, 91 Fed. Appx. 210, 215 (3d Cir. 2004). Thus, the VE clarified why Plaintiff could perform such a job. (R. at 393-95).

Further, the VE discussed the job of packing line worker, which requires a reasoning level of only one. The ALJ was obligated to identify only one job in the national economy that Plaintiff could perform. See 20 C.F.R. § 416.966(b) (work exists when there are a significant number of jobs in the national economy in one or more occupations).

This Court agrees with the ALJ's finding that the VE's testimony was consistent with information in the DOT (R. at 23), and finds that the ALJ properly relied on the testimony of the VE.

16.    Plaintiff's final argument is that the ALJ improperly relied upon Plaintiff's own statements that she was ready and willing to return to work (R. at 21), despite Dr. Dickinson's notation that Plaintiff had "limited insight." (R. at 293). When the ALJ asked Plaintiff why she could not work, she stated that she could work. (R. at 377, 378, 382). She claimed that she had been looking for a job but had not found one. (R. at 378). Later in her testimony, Plaintiff stated that she did not understand some of the work, but she also stated that her inability to understand was not due to any physical or mental problem. (R. at 383). This Court finds no error in this exchange between Plaintiff and the ALJ, nor the

ALJ's consideration of this testimony.

Plaintiff also takes issue with the ALJ's finding that Plaintiff was able to tell time (R. at 21), despite Dr. Dickinson's report that she could not do so on a "dial clock." (R. at 293). The ALJ based that finding on an exchange that took place during Plaintiff's hearing: he asked her to read the current time, and she responded correctly that it was 10:32. (R. at 21, 392). Because the ALJ did not identify whether Plaintiff read the correct time from a dial or digital clock, Plaintiff's counsel objects to the validity of the ALJ's finding. The ALJ, however, is permitted to consider his own observations of and interactions with a claimant during an administrative hearing. See SSR 96-7p. Regardless, that observation is merely one finding of many. (R. 20-21). Accordingly, this Court finds no error in the ALJ's consideration of Plaintiff's testimony.

17.  Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error. The decision contains a proper discussion of medical evidence supporting the ALJ's residual functional capacity assessment, including the informed medical opinions of Dr. Balderman (SSA's consulting physician), Dr. Dickinson (SSA's consulting psychologist), and Dr. Mohan (SSA's review psychologist). (R. at 17-19, 191-93). The hypothetical posed by the ALJ to the VE was also adequate. Further, the VE's testimony did not conflict with the DOT. Consequently, this Court finds that the ALJ's sequential evaluation of Plaintiff's claim is supported by substantial evidence in the record.

18.  After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions rendered therefrom. The ALJ thoroughly examined the record, afforded appropriate weight to all of the medical and opinion evidence, and appropriately relied on the vocational expert's testimony in rendering his

decision that Plaintiff is not disabled within the meaning of the Act. Accordingly, finding no reversible error and further finding that substantial evidence supports the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that Plaintiff's Cross-Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: July 30, 2010
       Buffalo, New York

       /s/William M. Skretny
       WILLIAM M. SKRETNY
       Chief Judge
       United States District Court